UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 25-cr-10025 |
| | ) | |
| v. | ) | Violation: |
| | ) | |
| GABRIEL GERSHOWITZ, | ) | Count One: |
| | ) | Conspiracy to Commit Securities Fraud |
| Defendant | ) | (18 U.S.C. § 371) |
| | ) | |
| | ) | Forfeiture: |
| | ) | 18 U.S.C. § 981(a)(1)(C) and |
| | ) | 28 U.S.C. § 2461(c) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.    Defendant GABRIEL GERSHOWITZ lived in New York.

2.    Victim Law Firm A ("Law Firm A"), Victim Law Firm B ("Law Firm B"), and Victim Law Firm C ("Law Firm C") were three of the largest corporate law firms in the world by revenue.  Each operated in countries around the world.

3.    From in or about 2010 to in or about 2018, GERSHOWITZ worked as a corporate attorney at Law Firm A, including on mergers and acquisitions.

4.    From in or about 2019 to in or about 2021, GERSHOWITZ worked as a corporate attorney at Law Firm B, including on mergers and acquisitions.

5.    From in or about 2021 to 2025, GERSHOWITZ worked as a corporate attorney at Law Firm C, including on mergers and acquisitions.

6.    Nicolo Nourafchan lived in New York and California and was a corporate attorney who worked on mergers and acquisitions at several international corporate law firms.

7.    Robert Yadgarov was a personal injury lawyer in New York.

8. GERSHOWITZ, Nourafchan, and Yadgarov attended The George Washington University and were friends.

9. Ardagh Group SA ("Ardagh") was a global supply company of glass, metal, and packaging products. At relevant times, Ardagh traded on the New York Stock Exchange ("NYSE") under the ticker symbol ARD. On or about July 15, 2019, Ardagh announced an agreement to combine Ardagh's Food & Specialty Metal Packaging business ("Food & Specialty") with the business of Exal Corporation ("Exal"), a producer of aluminum containers, to form Trivium Packaging ("Trivium"). Law Firm A represented a controlling shareholder of Exal in connection with the transaction. At the time of the announcement of the transaction, GERSHOWITZ worked for Law Firm A and owed duties of loyalty, trust, and confidence to Law Firm A and its clients.

10. Enstar Group Limited ("Enstar") was a global insurance company. At relevant times, Enstar traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol ESGR. On or about July 29, 2024, Enstar announced a definitive merger agreement under which a global investment firm ("the Global Investment Firm"), with other institutional investors, agreed to acquire Enstar. Law Firm C represented the Global Investment Firm in connection with the transaction. At the time of the announcement of the transaction, GERSHOWITZ worked for Law Firm C and owed duties of loyalty, trust, and confidence to Law Firm C and its clients.

<u>Overview of the Conspiracy</u>

11. Beginning no later than in or about 2018 and continuing through at least 2024, GERSHOWITZ conspired with Nourafchan, Yadgarov, and others known and unknown to the U.S. Attorney to obtain material non-public information ("MNPI") about the merger-and-acquisition activity of various publicly-traded companies and to execute securities trades while in

possession of that MNPI. As part of the conspiracy, Nourafchan and Yadgarov recruited corporate insiders, like GERSHOWITZ, to join the scheme and to provide MNPI in exchange for money and other tangible benefits. Nourafchan and Yadgarov then obtained MNPI from those corporate insiders about confidential forthcoming mergers and acquisitions and other corporate transactions involving publicly-traded companies, including MNPI that GERSHOWITZ misappropriated from his employers Law Firms A, B, and C, and their clients, to whom GERSHOWITZ owed duties of loyalty, trust, and confidence. Nourafchan and Yadgarov then passed that MNPI to individuals whom Nourafchan and Yadgarov recruited to join the conspiracy as traders and middlemen, who agreed to trade securities while in possession of that MNPI and to recruit other traders to trade while in possession of that MNPI. In exchange for the MNPI from Nourafchan and Yadgarov, co-conspirator traders and middlemen agreed to share a portion of their insider trading proceeds with Nourafchan, Yadgarov, and corporate insiders, including GERSHOWITZ, in transactions designed to conceal and disguise the nature, location, source, ownership, and control of those proceeds.

### Object and Purposes of the Conspiracy

12.     The object of the conspiracy was to commit securities fraud by trading in the securities of various companies while in possession of MNPI about those companies. The principal purposes of the conspiracy were to make money and to conceal the conspirators' actions from others, including regulators and law enforcement.

### Manner and Means of the Conspiracy

13.     Among the manner and means by which GERSHOWITZ, Nourafchan, Yadgarov, and others known and unknown to the U.S. Attorney carried out the conspiracy were the following:

a.      Recruiting attorneys and other corporate insiders, who had access to MNPI about the merger-and-acquisition activity of publicly traded companies;

b.      Misappropriating and sharing that MNPI, in violation of the duties of loyalty, trust, and confidence the attorneys owed to the sources of the MNPI, including the attorneys' employers and their clients;

c.      Recruiting co-conspirators who agreed to trade in the securities of public companies while in possession of MNPI in exchange for an agreement to share in the profits generated by their insider trading;

d.      Trading in the securities of those companies while in possession of MNPI about them;

e.      Transferring proceeds of the illicit trading to corporate insiders and other co-conspirators in cash and other transactions designed to conceal and disguise the nature, location, source, ownership, and control of the insider trading proceeds; and

f.      Taking steps to conceal the conspiracy from regulators and law enforcement, including by communicating about the MNPI in person and via encrypted messaging applications, using coded language, and transferring proceeds in transactions designed to conceal and disguise the nature, location, source, ownership, and control of those proceeds, including cash payments.

Overt Acts in Furtherance of the Conspiracy

14.     Beginning no later than in or about 2018 and continuing through at least 2024, GERSHOWITZ agreed to and did misappropriate MNPI from Law Firms A, B, and C and their

4

clients, and agreed to and did provide MNPI regarding several confidential forthcoming mergers and acquisitions to Nourafchan and Yadgarov, in exchange for money and tangible benefits. During that time period, GERSHOWITZ, Nourafchan, Yadgarov, together with others known and unknown to the U.S. Attorney, committed and caused to be committed at least the following overt acts, among others, in furtherance of the conspiracy:

*Ardagh*

15.    For example, in or about spring 2019, after Nourafchan and Yadgarov recruited GERSHOWITZ to join the insider trading scheme, GERSHOWITZ misappropriated MNPI from Law Firm A and its client regarding the Ardagh transaction, and GERSHOWITZ then provided the MNPI to Yadgarov and Nourafchan pursuant to an agreement that Yadgarov and Nourafchan would provide the MNPI to co-conspirators to trade while in possession of the MNPI and share the proceeds from that trading with Nourafchan, Yadgarov, and GERSHOWITZ.

16.    In or about summer 2019, after co-conspirators traded Ardagh securities while in possession of the MNPI regarding the Ardagh transaction, and after the public announcement of the Ardagh transaction, GERSHOWITZ received a cash payment from Yadgarov as compensation for the MNPI.

*Enstar*

17.    As an additional example, in or about spring 2024, GERSHOWITZ misappropriated MNPI from Law Firm C and its client regarding the Enstar acquisition, and GERSHOWITZ then provided the MNPI to Yadgarov and Nourafchan pursuant to an agreement that Yadgarov and Nourafchan would provide the MNPI to co-conspirators to trade while in possession of the MNPI and share the proceeds from that trading with Nourafchan, Yadgarov, and GERSHOWITZ.

18.     In or about summer 2024, after co-conspirators traded Enstar securities while in possession of the MNPI regarding the Enstar acquisition, and after the public announcement of the Enstar acquisition, GERSHOWITZ received a cash payment from Yadgarov as compensation for the MNPI.

<u>COUNT ONE</u>
Conspiracy to Commit Securities Fraud
(18 U.S.C. § 371)

The U.S. Attorney charges:

19.    The U.S. Attorney re-alleges and incorporates by reference paragraphs 1 to 18 of this Information.

20.    From in or about 2018 and continuing through at least 2024, in the District of Massachusetts and elsewhere, the defendant,

GABRIEL GERSHOWITZ,

conspired with Nicolo Nourafchan, Robert Yadgarov, and others known and unknown to the U.S. Attorney to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, to wit: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

21.     Upon conviction of the offense charged in Count One, the defendant,

### GABRIEL GERSHOWITZ,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

22.     If any of the property described in Paragraph 21, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 21 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

                                    LEAH B. FOLEY
                                    UNITED STATES ATTORNEY

                    By:    _____
                                    KAITLIN R. O'DONNELL
                                    IAN J. STEARNS
                                    Assistant United States Attorneys